UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 22-21951-CIV-MARTINEZ

JOHN P. MIDDLETON,

    Plaintiff,

v.

THE HOLLYWOOD REPORTER, LLC,
GARY BAUM, and ROY LEE,

    Defendants.
_____/

## ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

**THIS CAUSE** came before this Court upon Defendants' Motions to Dismiss (collectively, the "Motions to Dismiss"), (ECF Nos. 25, 27, 30), and Plaintiffs' Motion for Leave to File Amended Complaint ("Motion for Leave"), (ECF No. 63). This Court has reviewed the motions, pertinent portions of the record, and applicable laws and is otherwise fully advised in the premises. Accordingly, for the reasons set forth herein, the Motions to Dismiss, (ECF Nos. 25, 27, 30), are **GRANTED**, Plaintiff's Motion for Leave, (ECF No. 63) is **DENIED**, and this case is **DISMISSED**.

    I.    **BACKGROUND**

This action stems from a soured relationship between Plaintiff and Defendant Lee and an allegedly defamatory article regarding Plaintiff authored by Defendant Baum and published by Defendant The Hollywood Reporter ("THR"). For several years, Plaintiff and Lee had a business relationship concerning the production of motion pictures, as well as a personal friendship. (Compl. ¶ 12, ECF No. 1). Lee allegedly breached certain promises and engaged in fraudulent acts

against Plaintiff. (*Id.* at ¶ 13). Plaintiff then brought an action against Lee in Los Angeles Superior Court in California, captioned *John P. Middleton, et al. v. Roy Lee, at al.*, Case No. 19STCV30580 (the "California Action").

Plaintiff claims that in retaliation for the commencement of the California Action, Lee made false allegations against Plaintiff to Baum for publication in THR. (*Id.* at ¶ 14). On June 25, 2020[1], THR published *Allegations of Prostitution, Substance Abuse and Spying: Inside Hollywood's Nastiest Producer Feud* (the "Article"), repeating the alleged false and defamatory statements made by Lee to Baum. (*Id.* at ¶ 17). In July 2020, Plaintiff's publicist and attorney separately contacted Baum and THR seeking corrections of the alleged false statements made in the Article, but THR did not remove the statements. (*Id.* at ¶ 19). Plaintiff subsequently commenced this action on June 24, 2022, alleging defamation (Count I), breach of fiduciary duty (Count II), intentional infliction of emotional distress (Count III), and trade libel (Count IV). (*Id.* at 7-15).

## II. DEFENDANTS' MOTIONS TO DISMISS

Pursuant to Rule 7.1 of the Local Rules for the Southern District of Florida, Plaintiff was required to respond to the Motions to Dismiss on or before December 19, 2022. Plaintiff never filed a response and instead filed the Motion for Leave on April 24, 2023, (ECF No. 63). On June 20, 2023, this Court issued an Order to Show Cause, (ECF No. 69), to which Plaintiff's counsel responded that "the most efficient course of action was to seek leave from the Court to file an

---

[1] The Court notes that the date of publication mentioned in the original Complaint is June 25, 2020, (Compl. ¶ 17), but the PAC clarifies that the Article was first published in THR's print magazine on June 24, 2020, and was then published on THR's website the next day, June 25, 2020. (PAC ¶ 36).

amended complaint, both to address the arguments raised in Defendants' motions to dismiss, and to streamline the issues and claims in the case." (*See* ECF No. 70 ¶¶ 7, 10).

Local Rule 7.1(c) makes clear, the failure to respond to a motion "may be deemed sufficient cause for granting the motion by default." *See Sauve v. Lamberti*, 247 F.R.D. 703, 704 (S.D. Fla. 2008) (granting by default motion to dismiss and motion to strike for failure to serve an opposing memorandum of law in violation of Local Rule 7.1(c)). Accordingly, Defendants' Motions to Dismiss, (ECF Nos. 25, 27, 30), are GRANTED by default. However, although the Complaint is dismissed by default, the Court shall address the defamation claim on the merits since it is the only cause of action that is raised in the Proposed Amended Complaint ("PAC"). (*See generally* PAC, ECF No. 63-1).

**A. Florida's Borrowing Statute governs the applicable statute of limitations.**

Florida's borrowing statute provides that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." § 95.10, Fla. Stat. As the Florida Supreme Court explained, "The purpose of the statute is to discourage 'forum shopping' and the filing of lawsuits in Florida that have already been barred in the jurisdiction where the cause of action arose." *Celotex Corp. v. Meehan*, 523 So. 2d 141, 143 (Fla. 1988). In tort actions involving more than one state, Florida courts follow the "significant relationships test," such that "all substantive issues should be determined in accordance with the law of the state having the most significant relationship to the occurrence and the parties." *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1114 (Fla. 1987). The criteria for determining whether significant relationships exist include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of

the parties, and (d) the place where the relationship, if any, between the parties is centered. *Celotex*, 523 So. 2d at 144 (quoting the Restatement (Second) of Conflict of Laws § 145(2) (1971)).

Here, because the California Action is pending in California, the defamatory statements were published in California, the relationship of the parties is centered in California, and all Defendants reside in California, the factors weight in favor of California having the most significant relationship where the tort arose. This Court shall address each criterion in turn.

### 1. *Where the injury occurred.*

Plaintiff asserts that he is domiciled in Florida.[2] (*See* Compl. ¶¶ 1, 8). Plaintiff also claims that the Article "has done great harm to [Plaintiff] by grievously damaging his reputation in the entertainment industry where he works as a motion picture and television producer and operates a production company." (Compl. ¶¶ 3, 32-33). However, Plaintiff does not allege where the injury occurred and this factor is inconclusive. *See Nix v. ESPN, Inc.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *4 (S.D. Fla. Aug. 30, 2018) (finding that the first factor favored applying New York

---

[2] In their Motions to Dismiss, Defendants note that in the California Action, initiated on August 27, 2019, Plaintiff alleged he was domiciled in the County of Los Angeles, California. (California Action Compl. ¶ 5, ECF No. 26-11). Even one month before the Article was published in June 2020, the Second Amended Complaint ("SAC") of the California Action alleged that Plaintiff was residing in and conducting business in California. (California Action SAC ¶¶ 6-7, ECF No. 26-13). Although there is a discrepancy regarding Plaintiff's domicile, the Court must take Plaintiff's allegations in this instant action as true. *See Haaf v. Flagler Constr. Equip., LLC*, No. 10-62321-CIV, 2011 WL 13217331, at *1 (S.D. Fla. Feb. 23, 2011) ("In examining a motion to dismiss, a court accepts the plaintiff's allegations as true and construes the complaint in the plaintiff's favor."). Regardless of Plaintiff's domicile and where the injury occurred, this factor is outweighed by the reaming three. *See Nix*, 2018 WL 8802885, at *4 ("[T]he Court is concerned that Plaintiff is being untruthful either to this Court or to the Southern District of New York, because in the complaint Plaintiff filed in the Southern District of New York, he alleges domicile in Texas . . . Regardless, even if Plaintiff was a resident of Florida, this factor would not outweigh the others.").

law rather than Florida law because the plaintiff cited to "no specific instances of harm within Florida," and any "identifiable injury" would have occurred there.)

2. *Where the conduct causing the injury occurred.*

Although the Article was potentially accessible and viewable in all states, the defamatory statements were communicated to and authored by Braum, a California resident, and published by THR, a company with its principal place of business in California. (Compl. ¶¶ 10-11, 14, 17). *See Nix*, 2018 WL 8802885 at *4 (holding that although "the articles were published online and therefore were viewable anywhere . . . this factor weighs somewhat in favor of applying New York law because the decision to publish the original article was made by Defendant AP in New York."). Accordingly, this factor weighs in favor of California.

3. *The domicile, residence, or citizenships of the parties.*

While Plaintiff alleges he is domiciled in Florida, all three Defendants either reside or maintain a principal place of business in Los Angeles County, California. (Compl. ¶¶ 9-11). Thus, this factor weighs in favor of California.

4. *Where the relationship between the parties is centered.*

The Article at issue was written and published by a company with its primary place of business in California and concerns people who lived and worked in California who then filed a lawsuit in California. The alleged defamatory statements at issue are centered around the California Action and the parties' relationship in California. (Compl. ¶¶ 9-14). Accordingly, the application of California law is appropriate. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (holding that "the application of New York law is plainly appropriate" because "it is beyond real dispute that New York has the most significant relationship to the case. The article was published in New York, regarding an event that took place in New York, and that

allegedly caused harm to Michel's business interests in New York. Both the New York Post and the reporter defendants are domiciled in New York. While Michel is domiciled in Florida, that consideration is of little relative importance.").

**B. California's statute of limitations for defamation has expired.**

Because Florida's borrowing statute applies due to the significant relationships factors weighing heavily in favor of California, Plaintiff's defamation claim is time-barred pursuant to California's statute of limitations. California's statute of limitations for defamation is one year. *See* California Code of Civil Procedure 340(c). In both Florida and California, the cause of action for defamation accrues on the date of publication. *See Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So.2d 113, 115 (Fla. 1993); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1237, 80 P.3d 676, 679 (2003), *as modified* (Dec. 22, 2003). Here, the date the cause of action for defamation would have accrued on June 25, 2020, the date when the Article was published. (Compl. ¶ 17). Plaintiff filed this instant action on June 24, 2022, (ECF No. 1), almost one year after the expiration of California's statute of limitations. The court in *Jaisinghani v. Cap. Cities/ABC, Inc.*, encountered a similar set of facts:

> Plaintiff spent the better part of his life in California, developed several businesses there . . . started and maintained a fund-raising business there . . . Clearly, Plaintiff himself has a more significant relationship with California than with any other state. Moreover, the article in question focused on Plaintiff's fundraising and other activities in California. It thus seems fitting that the California statute of limitations should apply to his libel action, especially as he filed the action one day prior to the expiration of Florida's statute of limitations and 364 days after the expiration of California's. Plaintiff appears to be engaged in the very thing that Florida's borrowing statute was designed to prevent: forum shopping. California has the most significant relationship to this case and California's one year statute of limitations will bar this case from proceeding.

973 F. Supp. 1450, 1455 (S.D. Fla. 1997), *aff'd sub nom.*, 149 F.3d 1195 (11th Cir. 1998). Consistent with the court in *Jaisinghani*, and for the reasons stated above, this Court holds that Plaintiff's defamation action is barred by California's statute of limitations.

### III. PLAINTIFF'S MOTION FOR LEAVE

"[A] a party may amend its pleading . . . with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a] district court need not . . . allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

Here, the PAC discards the breach of fiduciary duty, intentional infliction of emotional distress, and trade libel claims and alleges two defamation claims focusing on "far more limited and specific passages of the publication in dispute." (ECF No. 70 ¶ 10; *see generally* PAC). The PAC adds the following new allegations regarding Plaintiff's domicile and where his injury occurred:

> Although previously a citizen of California, Mr. Middleton has not lived primarily in California since 2016, and he became a citizen and domiciliary of Florida in 2018 . . . Defendants worked in concert to publish a defamatory Article that was available to a worldwide audience and accessible on the internet in all U.S. states, including Florida. The Article was in fact accessed, viewed, and read by individuals in the State of Florida . . . The Article targeted and defamed a Florida resident, causing reputational harm to Mr. Middleton in Florida, his place of residence and citizenship at the time of publication of the Article . . . Lee's conduct caused injury to Mr. Middleton in Florida, Mr. Middleton's place of residence and domicile at the time of Lee's defamatory and tortious conduct . . . At the time the Article was published, Mr. Middleton's main production company, The Middleton Media Group, was no longer incorporated in California, but rather had changed its

>incorporation and principal place of business to Nevada. Defendants' conduct further harmed Mr. Middleton in Florida because of his ongoing business activities there at the time of publication.

(PAC ¶¶ 12-14, 16, 23-24).

Plaintiff argues that in multistate defamation, "the most important factor to be considered is the place of greater injury to reputation, which 'will usually be the state of the plaintiff's domicil[e] if the matter complaint of has there been published.'" (Motion for Leave at 8) (quoting Restatement (Second) of Torts § 145, cmt. e) (alteration in original). The Eleventh Circuit in *Frey v. Minter*, applying the comment of the Restatement, noted that "at first glance," Florida law appeared to apply because "Mr. Frey's injury occurred in part in Florida, where he resides, and the article was available in Florida via the internet." 829 F. App'x 432, 435 (11th Cir. 2020). The *Frey* court then added that "[t]he comment further provides, however, that in multistate defamation cases, the state of the plaintiff's domicile is not necessarily the state of most significant relationship 'if one of the other states [in which the defamatory statement was published] has a more significant relationship to the occurrence and the parties.'" *Id.* (quoting Restatement (Second) of Torts § 145, cmt. e). "This may be the case where (1) the plaintiff is better known in that state than the state of his domicile; (2) the statement was 'related to an activity of the plaintiff that is principally located in [that] state,' (3) 'the plaintiff suffered greater special damages in [that] state than in the state of his domicil[e],' or (4) the statement's place of principal circulation was in the non-domicile state." *Id.*

Applying those principles, the court in *Frey* held that it was unclear where Mr. Frey's injury occurred because "Mr. Frey is licensed to practice law in Georgia, but he lives and maintains his law office in Florida, and he represents both Florida and Georgia citizens in matters involving Georgia or federal law." *Id.* The court nonetheless held that the first factor weighs in favor of Florida law. However, the court held that as for the second factor, "[T]he conduct causing the

injury occurred in Georgia because the statements were made in Georgia by a Georgia resident and, again, the local newspaper's principal circulation is in Georgia." *Id.* at 436. The third factor, the residence of the parties, was a tie, and the fourth factor weighed heavily in favor of Georgia law because the parties' relationship [was] centered around the litigation that took place in Georgia." *Id.* As such, the *Frey* court concluded that Georgia had the most significant relationship to the case and that the district court correctly applied Georgia law. *Id.*

Here, Plaintiff's new allegations claiming he was injured in Florida do not alter this Court's conclusion that California law applies. For the reasons stated in Section II of this Order, this Court finds that amendment would be futile and therefore Plaintiff's Motion for Leave is DENIED.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that

1. The Motions to Dismiss, (ECF Nos. 25, 27, and 30), are **GRANTED**. The Complaint, (ECF No. 1), is **DISMISSED**.

2. The Motion for Leave, (ECF No. 63), is **DENIED WITH PREJUDICE**.

3. The Clerk of Court is **DIRECTED** to **CLOSE** this case. All deadlines are **TERMINATED**, and all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9 day of August, 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record